IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT STRATTON, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 11-142 |
| | ) | |
| | ) | Magistrate Judge Maureen P. Kelly |
| CO I STEVE, in her individual capacity and | ) | |
| Official capacity as an officer at the State | ) | |
| Correctional Institution at Fayette; BRIAN | ) | |
| COLEMAN, in his individual capacity and | ) | |
| Official capacity as superintendent of the | ) | |
| State Correctional Institution at Fayette; | ) | |
| SUE BARRIER, in her individual capacity | ) | |
| And official capacity as medical department | ) | Re: ECF No. 125 |
| Supervisor at the State Correctional | ) | |
| Institution at Fayette; LIEUTENANT | ) | |
| LESURE, in his individual capacity and | ) | |
| Official capacity as an officer at the State | ) | |
| Correctional Institution at Fayette; CO I | ) | |
| COLLINGS,[1] in his individual capacity and | ) | |
| Official capacity as an officer at the State | ) | |
| Correction Institution at Fayette; SUMMER | ) | |
| DUGAN, in her individual capacity and | ) | |
| Official capacity as a counselor at the State | ) | |
| Correctional Institution at Fayette, | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

**KELLY, Magistrate Judge**

Plaintiff Robert Stratton, a Pennsylvania state prisoner proceeding with appointed

counsel, has filed a civil rights action pursuant to 42 U.S.C. § 1983 against various employees of

the State Correctional Institution at Fayette ("SCI – Fayette"), alleging the violation of his rights

---

[1] During the course of discovery, it became apparent that Corrections Officer Collings was incorrectly identified in the caption of Plaintiff's Second Amended Complaint as "CO Collins." The parties have moved for the correction of the caption in this matter, and the docket has been corrected to reflect Defendant Collings' correct name. [ECF Nos. 140, 141].

under the First, Eighth and Fourteenth Amendments to the United States Constitution, Section

504 of the Rehabilitation Act of 1972 (29 U.S.C. § 794), and Title II of the Americans with

Disabilities Act (42 U.S.C. § 12131, *et seq.*).  Defendants have filed a Motion for Summary

Judgment as to all claims [ECF No. 125].  For the following reasons, the Motion for Summary

Judgment is granted.

I.      **FACTUAL AND PROCEDURAL BACKGROUND**

        Plaintiff, proceeding pro se and in forma pauperis, commenced this Section 1983 action

on February 3, 2011, by filing a Complaint, exhibits thereto, and a Motion for Appointment of

Counsel [ECF No. 1].  Upon consideration of Plaintiff's documented and apparent history of

mental health issues and given his filing of several unsupported motions seeking judicial

intervention with regard to the circumstances of his confinement, this Court granted Plaintiff's

Motion for Appointment of Counsel. [ECF No. 81].[2]

        A Second Amended Complaint [ECF No. 103] was filed by appointed counsel, alleging

claims arising out of Plaintiff's incarceration at SCI – Fayette.  In Count I, Plaintiff alleges he

was retaliated against for filing a grievance against the assistant librarian and deprived of due

process in violation of his First and Fourteenth Amendment rights, when his assigned counselor,

Defendant Summer Dugan, increased his custody level to Level 4, and thereby precluded

Plaintiff from being considered for an incentive based transfer.  At Count II, Plaintiff alleges that

Defendants were deliberately indifferent to his serious mental health needs and, in violation of

his Eighth Amendment rights, failed to provide him with adequate mental health care.  At Count

III, Plaintiff alleges an Eighth Amendment claim for cruel and unusual punishment arising out of

---

[2] The Court notes its gratitude to appointed counsel Robert J. Marino, Esq. and the law firm of Dickie, McCamey & Chilcote for their commitment to providing legal services on a pro bono basis to litigants, like Plaintiff, who are unable to otherwise obtain legal representation.

housing Plaintiff in a Restricted Housing Unit, without appropriate mental health care and treatment. Finally, at Count IV, Plaintiff alleges a claim for the violation of the Rehabilitation Act and the Americans with Disabilities Act, 29 U.S.C. § 794 and 42 U.S.C. § 12132, for failing to provide non-segregated and non-isolated confinement and increased mental health care treatment as "reasonable accommodations to prevent confinement conditions which exacerbate Plaintiff's mental illness." [ECF No. 103, ¶ 51].

In response, Defendants contend that there are no material issues of fact precluding the entry of judgment in favor of Defendants as a matter of law as to each of the claims presented.

## II.    STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986) (emphasis in original).

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. Anderson, 477 U.S. at 248; Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 257; Brenner v. Local 514, United Brotherhood of Carpenters and Joiners of America, 927 F.2d 1283, 1287–88 (3d Cir. 1991).

When determining whether there is a genuine issue of material fact, the court must view the facts and all reasonable inferences in favor of the nonmoving party. Moore v. Tartler, 986 F.2d 682 (3d Cir. 1993); Clement v. Consolidated Rail Corporation, 963 F.2d 599, 600 (3d Cir. 1992). In order to avoid summary judgment, however, parties may not rely on unsubstantiated allegations. Parties seeking to establish that a fact is or is not genuinely disputed must support such an assertion by "citing to particular parts of materials in the record," by showing that an adverse party's factual assertion lacks support from cited materials, or demonstrating that a factual assertion is unsupportable by admissible evidence. Fed.R.Civ.P. 56(c)(1); see Celotex, 477 U.S. at 324 (requiring evidentiary support for factual assertions made in response to summary judgment). The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986). Parties must produce evidence to show the existence of every element essential to its case that they bear the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323; see Harter v. G.A.F. Corp., 967 F.2d 846, 851 (3d Cir. 1992). Failure to properly support or contest an assertion of fact may result in the fact being considered undisputed for the purpose of the motion, although a court may also give parties an opportunity to properly provide support or opposition. Fed.R.Civ.P. 56(e).

## III. DISCUSSION

Plaintiff asserts claims against Defendants pursuant to 42 U.S.C. § 1983 for the violation of his First, Eighth and Fourteenth Amendment rights, as well as his rights arising under the Rehabilitation Act and the Americans with Disabilities Act, 29 U.S.C. § 794 and 42 U.S.C.

§ 12132. Section 1983 affords a right to relief where official action causes a deprivation of rights protected by the Constitution or federal law.  Monell v. Dep't of Soc. Servs, 436 U.S. 658, 690 (1978).  The statute is not an independent source of substantive rights, but merely provides a remedy.   Thus, to establish a claim under Section 1983, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." Harvey v. Plains Twp. Police Dep't, 421 F.3d 185, 189 (3d Cir. 2005) (quoting West v. Atkins, 487 U.S. 42, 48 (1988)). For the reasons that follow, Plaintiff fails to establish the violation of any Constitutional right or federal law and Defendants therefore are entitled to the entry of judgment in their favor as a matter of law.

## A.    Count I - Due Process and Retaliation Claims

Plaintiff's Second Amended Complaint alleges the violation of his First and Fourteenth Amendment rights because of a change in his facility custody level implicating his institutional placement.[3]  In particular, Plaintiff alleges that on or about December 3, 2010, he requested an incentive-based hardship transfer from SCI-Fayette, presumably to be closer to his family in Eastern Pennsylvania.  [ECF No. 103, ¶ 18].  Plaintiff contends that his request was denied because his facility custody level was set at Level 4 and incentive-based transfers are only granted to inmates with a Level 2 custody level.  Id.  Plaintiff alleges that his custody level was changed without his knowledge in retaliation for filing Grievance # 320068 against Assistant Librarian J. Brown on June 1, 2010.  The change is alleged to have been made by Defendant

_____

[3] A First Amendment claim is implicit in Plaintiff's allegations of retaliation resulting from engaging in protected speech through the filing of a grievance.

5

Dugan, who Plaintiff believes "had a personal relationship" with Assistant Librarian Brown. [ECF No. 134, ¶ 3].

As a factual matter, discovery has concluded and Plaintiff has not provided the Court with evidence that his custody level was increased in any relevant manner after the filing of Grievance # 320068, or that Defendant Dugan was aware of this particular grievance so that a fact finder could reasonably infer a motive to retaliate. Instead, the documents supplied by Defendants indicate that for the period 1998 through at least June 2012, Plaintiff's custody level was never lower than a Level 3, and for the period November 9, 2007, though January 14, 2011, his custody level appears to have remained at Level 4, at which point it was briefly increased to Level 5 during Plaintiff's stay in a psychiatric observation unit. [ECF No. 127-3]. Defendants have presented evidence that to the extent a change may have occurred, Plaintiff's custody level was dictated by applicable Department of Corrections' policy, based upon Plaintiff's extensive history of assaultive behavior while incarcerated. [ECF Nos. 127-2, pp. 7-11; 127-4]. Defendant Dugan's review of Plaintiff's incarceration and assault record resulted in her recommendation of a Level 4 custody level. This recommendation was approved by personnel at the Department of Corrections ("DOC") responsible for single cell custody levels. Id. Defendant Dugan testified that she would not have been informed of the grievance at issue until the final disposition and imposition of a penalty, and so she was unaware of Plaintiff's grievance at the time she made her custody level recommendation. Further, given the applicable DOC regulations and Plaintiff's history of assaults, Plaintiff's custody level was automatically set by the computer program used to determine custody level status for the protection of other inmates and staff and served to protect any potential cellmates. [ECF No. 127-2].

Against this factual background, Defendants are entitled to the entry of judgment in their favor as a matter of law with regard to Plaintiff's Fourteenth Amendment due process claim. To the extent Plaintiff alleges his custody level was changed without notice, Plaintiff cannot establish that he was deprived of a protected liberty interest implicating due process rights guaranteed by the Fourteenth Amendment.

The Fourteenth Amendment provides, in relevant part, "nor shall any State deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV, § 1. "Due process of law" essentially requires that the government provide a person notice and opportunity to be heard in connection with the deprivation of life, liberty, or property. Zappan v. Pennsylvania Board of Probation and Parole, 152 F. App'x 211, 220 (3d Cir. 2005) ("The essential requirements of any procedural due process claim are notice and the opportunity to be heard."). Thus, to establish a prima facie case of a procedural due process violation, a plaintiff must establish: (1) the existence of a protected liberty or property interest; (2) that the state deprived the person of; and (3) that the deprivation was accomplished without procedural protections of notice and an opportunity to be heard. Shoats v. Horn, 213 F.3d 140, 143 (3d Cir. 2000).

A protected liberty interest may arise either from the Due Process Clause itself, or from a state statute, rule, or regulation. See Hewitt v. Helms, 459 U.S. 460, 466 (1983) (citing Meachum v. Fano, 427 U.S. 215, 223–27 (1976)). Only after it is determined that an asserted liberty interest is protected by the Due Process Clause does the question become what process is due to protect that interest. Id. (citing Morrissey v. Brewer, 408 U.S. 471, 481 (1972)).

In Sandin v. Conner, 515 U.S. 472, 484 (1995), the United States Supreme Court held that in the context of prisoners, protected liberty interests are "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, ... nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."

In determining whether a particular form of prison discipline presents an "atypical and significant hardship," a court considers "what a sentenced inmate may reasonably expect to encounter as a result of his or her conviction in accordance with due process of law." Asquith v. Department of Corr., 186 F.3d 407, 412 (3d Cir. 1999) (quoting Griffin v. Vaughn, 112 F.3d 703, 706 n. 2 (3d Cir. 1997). As a result, the proper focus is on the nature of the deprivation itself. Sandin, 515 U.S. at 481–82. In this regard, the fact that an inmate may be subjected to administrative custody or incarceration at greater security levels while in prison will not, without more, indicate an atypical and significant hardship relative to the ordinary incidents of prison life. See Fraise v. Terhune, 283 F.2d 506, 522 (3d Cir. 2002) (an inmate who is transferred from a low-security to a high-security correctional facility faces additional restrictions, but such a transfer nevertheless does not impose an atypical and significant hardship relative to the ordinary incidents of prison life). Convicted state inmates can reasonably expect to be housed in state correctional institutions as part of their criminal sentences, and thus the establishment of a custody level and placement in a particular correctional institution does not violate an inmate's due process rights or otherwise violate the constitution. See Hewitt, 459 U.S. at 468 ("It is plain that the transfer of an inmate to less amenable and more restrictive quarters for non-punitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence.").

See also, Moody v. Daggett, 429 U.S. 78, 88 n. 9 (1976).  Given that Plaintiff's custody level does not implicate a protected liberty interest, Plaintiff cannot establish a Fourteenth Amendment violation of his due process rights with regard to notice of an alleged change in his custody level.

Plaintiff also cannot point to any state-created interest in a lower custody level classification.  While Plaintiff makes reference to an alleged violation of DOC policy with regard to a change in his custody level, "prison regulations do not, in themselves, confer a liberty interest protected by due process, and the failure of prison officials to follow DOC policy does not, in and of itself, result in a violation of due process." Bohm v. Straw, No. 12-16J, 2013 WL 100441 (W.D. Pa. Jan. 8, 2013), *appeal dismissed* (Mar. 6, 2013). "The simple fact that state law prescribes certain procedures does not mean that the procedures thereby acquire a federal constitutional dimension." Id., citing United States v. Jiles, 658 F.2d 194, 200 (3d Cir. 1981); Phillips v. Norris, 320 F.3d 844, 847 (8th Cir.2003) ("[T]here is no federal constitutional liberty interest in having state officers follow state law or prison officials follow prison regulations ...."). Thus, violations of state statutes or rules or regulations that require certain procedures, which are not compelled by the Federal Constitution because there is no liberty interest at issue, do not make out a Section 1983 claim. Hayes v. Muller, No. 96–3420, 1996 WL 583180 (E.D. Pa. Oct. 10, 1996) ("[A] state does not violate an individual's federal constitutional right to procedural due process merely by deviating from its own established procedures"); Rowe v. Fauver, 533 F. Supp. 1239, 1246 n. 10 (D.N.J. 1982) ("[A] failure by state officials to follow state procedural regulations not independently required by the Constitution fails to state a claim under the Due Process Clause.").

Because it is well-established that prisoners have no inherent constitutional right to placement in any particular prison, or to any security classification, and Plaintiff has not established any facts making the denial of his request for an incentive based transfer actionable under the circumstances presented, Defendants are entitled to the entry of judgment in their favor as to Plaintiff's due process claim. See Olim v. Wakinekona, 461 U.S. 238(1983); Meachum v. Fano, 427 U.S. 215, 225 (1976).

Defendants are also entitled to judgment in their favor as a matter of law with regard to Plaintiff's First Amendment retaliation claim predicated upon Defendant Dugan's decision to continue or place Plaintiff's custody level at Level 4.

It is well settled that retaliation for the exercise of a constitutionally protected right may violate the protections of the First Amendment, which is actionable under Section 1983. Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001). Merely alleging the fact of retaliation, however, is insufficient. Rather, to prevail on a retaliation claim, a plaintiff must show: (1) that he engaged in constitutionally protected conduct; (2) that an adverse action was taken against him by a prison official; and (3) that there is a causal connection between the exercise of his constitutional rights and the adverse action. Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003). See Rauser v. Horn, 241 F.3d at 333 (the constitutionally protected conduct must be "a substantial or motivating factor" in the decision to discipline the inmate). A causal connection between the protected conduct and the adverse action may be established by showing that there is a temporal proximity between the plaintiff's protected activity and the defendants' adverse action. The timing of the alleged retaliatory conduct, however, must be suggestive of a retaliatory motive. See Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007) (to show a causal connection, a

plaintiff must prove "either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link"); Estate of Smith v. Marasco, 318 F.3d 497, 512 (3d Cir. 2003), citing Krouse v. Am. Sterilizer Co., 126 F.3d 494, 503 (3d Cir. 1997) (holding that the temporal proximity between the protected conduct and the alleged retaliatory action must be "unusually suggestive" before the court will infer a causal link).

Once these criteria are met, the burden shifts to the Defendants "to prove by a preponderance of the evidence that [they] would have taken the same disciplinary action even in the absence of the protected activity." Rauser v. Horn, 241 F.3d at 333. "This means that, once a prisoner demonstrates that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." Id at 334. Because retaliation claims can be easily fabricated, district courts must view prisoners' retaliation claims with sufficient skepticism to avoid becoming entangled in every disciplinary action taken against a prisoner. See Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996); Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995); Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995).

Defendants argue that Plaintiff is unable to establish the third prong; a causal connection between the protected activities engaged in by Plaintiff and the alleged adverse action taken by Defendants. The Court agrees. Other than Plaintiff's speculation, there is no evidence that Defendant Dugan was aware of the grievance that allegedly precipitated the change in Plaintiff's custody level. Defendant Dugan was not named in the grievance, and has testified that she did

not receive a copy. In addition, Defendants have presented uncontradicted evidence that even in the absence of Plaintiff's grievance, his classification at Level 4 was proper and served a legitimate penological interest. In accordance with DOC policy, Plaintiff's single cell "Z-Code" and extensive history of assaults and misconduct required that Plaintiff's custody level be set at Level 4, rendering him ineligible for an incentive-based transfer. [ECF No. 127-4]. Plaintiff's placement was approved by DOC officials in Harrisburg and, under these circumstances, no reasonable juror could conclude that Defendant Dugan retaliated against him by interfering with his request for an incentive-based hardship transfer.

**B. Counts II and III - Eighth Amendment Claims**

Plaintiff alleges the violation of his Eighth Amendment rights arising out of Defendants' conduct with regard to the promulgation and implementation of medication distribution security procedures, the provision of adequate mental health care, and the placement of Plaintiff in restrictive housing in disregard of his mental health needs. Defendants argue that entry of judgment in their favor is appropriate as to all Eighth Amendment claims as a matter of law because the record fails to establish that any Defendant was deliberately indifferent to Plaintiff's mental illness.

The Eighth Amendment protects individuals against the infliction of "cruel and unusual punishments." This protection guarantees incarcerated persons humane conditions of confinement. In this regard, prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care, and must "take reasonable measures to guarantee the safety of the inmates." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (*quoting* Hudson v. Palmer, 468 U.S. 517, 526–27 (1984)).

A prison official violates the Eighth Amendment only when two requirements are met. The inmate must show that: 1) he suffered a risk of "serious" harm; and 2) prison officials showed "deliberate indifference" to such risk. Farmer, 511 U.S. at 834. The first element is satisfied when the alleged "punishment" is "objectively sufficiently serious." Id. In determining whether a prisoner has alleged a risk that is objectively serious, a court must consider not only the seriousness of the potential harm and the likelihood that the harm will actually occur, but evidence that unwilling exposure to that risk violates contemporary standards of decency. In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate. Helling v. McKinney, 509 U.S. 25, 35 (1993).

The second criterion, deliberate indifference, requires an inmate to show that the prison official had a sufficiently culpable state of mind. The United States Supreme Court clarified this deliberate indifference standard in Farmer as follows.

> We reject petitioner's invitation to adopt an objective test for deliberate indifference. We hold instead that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. This approach comports best with the text of the Amendment as our cases have interpreted it. The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation.... But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

Farmer, 511 U.S. at 837–838.

In the context of an alleged Eighth Amendment arising out of the provision of medical treatment, an inmate must therefore prove two elements: 1) plaintiff was suffering from a "serious medical need," and 2) prison officials were deliberately indifferent to the serious medical need. Gamble v. Estelle, 427 U.S. 107 (1978). The first showing requires the court objectively to determine whether the medical need was "sufficiently serious." A medical need is "serious" if it is one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987). The second prong requires a court subjectively to determine whether the officials acted with a sufficiently culpable state of mind. Deliberate indifference may be manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, a denial of prescribed medical treatment, or a denial of reasonable requests for treatment that results in suffering or risk of injury. Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993). See also Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 763 (3d Cir. 1979) (noting that the failure to provide necessary psychological or psychiatric treatment to inmates with serious mental or emotional disturbances will result in the infliction of pain and suffering just as results from the failure to treat serious physical ailments).  However, disagreements over an appropriate course of treatment do not give rise to a constitutional violation because the "right to be free from cruel and unusual punishment does not include the right to the treatment of one's choice." Layne v. Vinzant, 657 F.2d 468, 473 (1st Cir. 1981); accord Young v. Quinlan, 960 F.2d 351, 358 n. 18 (3d Cir. 1992) (an inmate's disagreement with prison personnel over the exercise of medical judgment does not state claim for relief under section 1983).

Defendants do not dispute that Plaintiff has been diagnosed with paranoid schizophrenia and was undergoing treatment in the form of counseling and medication. Similarly, Plaintiff does not dispute that he has been provided treatment for mental illness throughout his incarceration, including ongoing psychiatric care, medication, and when necessary, the forced administration of medication or temporary involuntary commitment to mental health facilities based on threats of self-harm or acts that could be construed as self-harm. See, Exhibit 7.[4] Instead, Plaintiff challenges Defendants' requirement that Plaintiff produce appropriate identification to obtain his medication in the "pill line," and contends the requirement was arbitrarily implemented in deliberate disregard for his mental health. Plaintiff alleges that because the requirement was arbitrarily enforced, Plaintiff missed a single dose of his medication and suffered an immediate exacerbation of symptoms that led to his placement in a psychological observation cell. Plaintiff's claim fails as a matter of law.

While Plaintiff disputes the existence of a DOC authorized written policy requiring appropriate identification for medication, Plaintiff cannot dispute that SCI – Fayette's requirement to show photo identification serves an obvious and legitimate penological interest to protect inmates from possible medication errors and/or obtaining access to medication prescribed to another inmate under false pretenses. Defendant Collings has presented evidence that the requirement is to ensure security on the pill line, where "a lot of bad things happen." [ECF No. 127-5]. Further, Plaintiff does not dispute the evidence presented by Defendants Collings and

---

[4] Plaintiff's mental health treatment history was reviewed by the Court in conjunction with his request for the appointment of counsel. These records, submitted under seal, were returned to Plaintiff's counsel after resolving the limited purpose for which they were examined, i.e., determining the necessity for counsel. However, in support of their Motion for Summary Judgment, Defendants have provided additional records to the Court under seal for the years 2010 through 2012 as Exhibit 7. In sum, the records establish that Plaintiff was regularly treated by a psychiatrist at each of the facilities he was housed, and was medicated as necessary and indicated by his condition.

Berrier that a process was in place for an inmate without sufficient identification on any particular day to immediately obtain a replacement so that he could receive his medication. Nor does Plaintiff dispute that he failed to avail himself of that process. [ECF 127-5, pp. 3-6].

Where the Plaintiff has access to medication but refuses to follow routine security procedures to receive it, Plaintiff's conduct is construed as a medication refusal and an Eighth Amendment violation is not established. See, Bracey v. Pennsylvania Dep't of Corr., No. 11-4 E, 2012 WL 750911 (W.D. Pa. Feb. 17, 2012) *report and recommendation adopted*, 2012 WL 762011 (W.D. Pa. Mar. 8, 2012) *amended*, 2012 WL 787022 (W.D. Pa. Mar. 9, 2012) *reconsideration denied*, 2012 WL 1825828 (W.D. Pa. May 18, 2012)(refusal to stand at cell door with light on is equivalent to "medication refusal" and enforcement of rule does not constitute deliberate indifference to an inmate's medical needs); Crews v. Beaven, No. 07-2217, 2010 WL 3632144 (M.D. Pa. Sept. 10, 2010)(same). See, also, Brown v. Rozum, No. 11-3468, 2011 WL 5925307 (3d Cir. Nov. 29, 2011) (acceptance of an inmate's refusal of medication does not state a claim for deliberate indifference). "He has not been denied his medication; he has refused it." Id. at 1. Plaintiff's failure to return to his cell block for a temporary pass after because he was without proper identification therefore does not rise to an actionable refusal to provide medical treatment.

In addition, the test for deliberate indifference is not objective; Plaintiff must show that each Defendant knew that requiring Plaintiff to return to his cell block for proper identification placed Plaintiff's health at significant risk and yet ignored that risk. Farmer, 511 U.S. at 838. Plaintiff has not presented evidence that any Defendant would have reason to suspect that missing a single dose of routine medication would cause Plaintiff serious harm and then

16

intentionally disregarded that risk. Instead, the evidence of record establishes that in the course of Plaintiff's appeal of the misconduct issued arising out this incident, the psychology department was consulted and "per psychology if the inmate missed one dose of meds it would not have caused a problem." [ECF No. 127-11, p. 5]. In the absence of evidence of actual harm or subjective knowledge of harm, Plaintiff's claim fails as a matter of law. See, e.g., Boyd v. Russo, 13-1521, 2013 WL 4517003 (3d Cir. Aug. 27, 2013) (allegations of refusal to provide medication on two days are inadequate as a matter of law where plaintiff presents no evidence that defendant physician knew that occasionally missing a dose would cause serious harm).

For similar reasons, Plaintiff's claims against Defendants Berrier and Steve regarding his placement in a Psychiatric Observation Cell after the incident, alleged threats to use a restraint chair or pepper spray in response to his screaming and abusive language, and the issuance of a misconduct for his threats to kill Defendant Steve's family, fail as a matter of law. There is no evidence that these acts, if they occurred, created a risk of serious harm and no evidence that either Defendant was subjectively aware that these acts would risk serious harm to Plaintiff's mental health, and then disregarded that risk. In the absence of evidence establishing a prima facie Eighth Amendment claim with regard to Plaintiff's placement in a Psychiatric Observation Cell, it also appears that Plaintiff has abandoned these claims by failing to oppose Defendant's Motion for Summary Judgment.

Plaintiff also has alleged that despite his lengthy course of psychiatric treatment and medication, Defendants Collings, Steve, Berrier, Lesure and Coleman provided inadequate mental health treatment in violation of his Eighth Amendment rights. A plaintiff alleging constitutionally inadequate medical treatment must submit medical evidence of a "serious

medical need" sufficient to satisfy the objective component of the test. <u>Young v. Kahn</u>, No. 11-380, 2013 WL 787088 (W.D. Pa. Feb. 5, 2013) *report and recommendation adopted*, 2013 WL 786923 (W.D. Pa. Mar. 1, 2013)(citing <u>Boring v. Kozakiewicz</u>, 833 F.2d 468 (3d Cir.1987)). In <u>Boring</u>, the United States Court of Appeals for the Third Circuit determined that because plaintiffs failed to produce expert testimony that their injuries were "serious," they failed to meet their burden of proof. The court explained that expert testimony would not necessarily be required in situations where the seriousness of injury or illness would be apparent to a lay person, e.g., a gunshot wound. <u>Boring</u>, 833 F.2d at 473 (citing <u>City of Revere v. Massachusetts General Hosp.</u>, 463 U.S. 239 (1983)). Further, in determining whether the treatment provided is sufficient, "courts will not 'second-guess the propriety or adequacy of a particular course of treatment [which] remains a question of sound professional judgment.'" <u>Id.</u> (quoting <u>Inmates of Allegheny County Jail v. Pierce</u>, 612 F.2d 754, 762 (3d Cir. 1979)).

In the instant action, Plaintiff has not provided the Court with any expert evidence to substantiate the need for a different kind of treatment than he received and presumably, still is receiving. Moreover, the record evidence belies his contentions in this regard. None of the mental health providers who examined and treated Plaintiff during the relevant time period prescribed a different method of treatment from what he was receiving. Thus, without expert testimony or evidence, a lay person would not be able to conclude that Plaintiff's unsubstantiated allegations regarding the alleged inadequacy of his course of treatment constituted a "serious medical need." Because evidence of this nature is required in this type of case, Plaintiff's failure to meet this burden is fatal to his case. *Accord* <u>Sherrer v. Stephens</u>, 50 F.3d 496, 497 (8th Cir.1995) (inmate failed to submit sufficient evidence that defendants ignored an acute or

escalating situation or that delays adversely affected his prognosis, given the type of injury in this case); Lopez v. Robinson, 914 F.2d 486, 490 (4th Cir. 1990) (to objectively determine whether a "serious deprivation" of a basic human need has occurred (i.e., whether prison conditions to rise to the level of unconstitutional punishment), there must be evidence of a serious medical and emotional deterioration attributable to the challenged condition).

In addition, Defendants, as non-physicians, cannot be considered deliberately indifferent for failing to respond to Plaintiff's medical complaints regarding his mental health treatment, given Plaintiff's ongoing treatment by the prison's medical staff. Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir.1993). The Court of Appeals for the Third Circuit has explained that a prison's need for efficient division of labor suggests that where a prisoner is being treated by medical personnel "a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004).

Plaintiff's medical records establish that he received prompt and thorough mental health care by trained professionals, including a psychiatrist, psychologist, and trained nursing staff throughout his incarceration. [See, e.g., ECF No. 7, Individual Treatment Plans dated 9/20/2010; 9/30/2011; Mental Health Contact Notes]. When suffering a mental health emergency, his treatment included multiple visits per day by mental health staff, as well as medication changes. [ECF No. 7] In addition, Plaintiff's records reflect that he experienced extended periods of stability and reports of well-being, with markedly infrequent lapses. Id. Under these circumstances, absent a showing by Plaintiff that Defendants knew or had a reason to believe that prison medical personnel were mistreating him (or failing to treat him), Defendants cannot be charged with being deliberately indifferent to his serious medical needs. Spruill v. Gillis, 372

F.3d at 236; and see, <u>Washington v. Showalter</u>, No. 07-1159, 2009 WL 5218068 (M.D. Pa. Dec. 31, 2009) *aff'd*, 494 F. App'x 268 (3d Cir. 2012).

Finally, Plaintiff contends that Defendants were deliberately indifferent to his mental illness by inappropriately housing him in a single cell within a Special Needs or Restricted Housing Unit, in disregard of the toll such placement would take on his health. The mental health records provided to the Court indicate that while Plaintiff exhibited extended periods of relative good mental health and that placement in a step-down unit was considered as a potential transition to general population,[5] his placement in a restricted unit with a Z code at a Level 4 custody level continued as the result of misconducts, including defecating on his cell floor,[6] as well as "defiance and episodic impulsiveness and violent aggression."[7] Plaintiff fails to present evidence that his single cell housing placement, imposed in response to misconduct and for safety reasons, presented a serious medical condition that was not properly treated through his ongoing psychiatric care. In addition, there is no evidence that any Defendant was aware that the treatment provided was inadequate. Given the evidence of extensive counseling made available to him on a regularly scheduled and emergency basis, no reasonable juror could conclude that Plaintiff's housing placement posed a substantial risk of serious harm or that the defendants were deliberately indifferent to his psychological condition. In the absence of any material issues of fact regarding Plaintiff's claim arising out of his housing Plaintiff, Defendants are entitled to judgment in their favor as a matter of law. <u>Nifas v. Beard</u>, 374 F. App'x 241, 245 (3d Cir. 2010).

---

[5] See, ECF No. 7, Psychological Evaluation for Placement in the Special Needs Step Down Unit, January 14, 2011.
[6] See, ECF No. 7, Mental Health Contact Note, February 10, 2011.
[7] See, ECF No. 7, Addendum to Psychological Evaluation for CCC and Parole, March 29, 2011.

### C. Count IV - ADA and Rehabilitation Act claims.

Plaintiff alleges that because he is mentally ill, Defendants violated his rights under the Americans with Disabilities Act and the Rehabilitation Act "by failing to provide non-segregated and non-isolated confinement and increased mental health care treatment as a reasonable accommodation to prevent confinement conditions which exacerbate Plaintiff's illness." [ECF No. 103, ¶ 51]. Defendants move for the entry of summary judgment contending, *inter alia,* that Plaintiff has failed to properly plead or support a claim for the violation of either statute.

Title II of the ADA provides, in relevant part, that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by such entity." 42 U.S.C. § 12132. Similarly, Section 504 of the RA states, "no otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency." 29 U.S.C. § 794. "Program or activity" also includes the operations of a State or local government department or agency. 29 U.S.C. § 794 (b)(1)(A). Prisons therefore fall within the statutory definition of public entities or programs. See e.g., Pa. Dep't of Corr. v. Yeskey, 524 U.S. 206 (1996).

"To establish a violation of Title II of the ADA or Section 504 of the RA, an inmate must allege that: (1) he is a qualified individual with a disability; (2) he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability."

Brown v. Deparlos, 492 F. App'x 211, 215 (3d Cir. 2012) (citing 42 U.S.C. § 12132). The ADA defines a disability as "a physical or mental impairment that substantially limits one or more major life activities." § 12102(1)A.

In this action, ADA and RA claims brought against the Defendants in their personal capacities are not cognizable. See O'Donnell v. Pennsylvania Dep't of Corr., 790 F. Supp. 2d 289, 308 (M.D. Pa. 2011) aff'd, 507 F. App'x 123 (3d Cir. 2012). Accordingly, to the extent Plaintiff seeks liability against Defendants in their individual capacities for alleged violations of these statutes, Defendants are entitled to the entry of judgment in their favor as a matter of law.

Further, based upon a careful review of the Second Amended Complaint, the Motion for Summary Judgment, as well as the briefs and exhibits filed in support and opposition thereto, the Court finds that there are no specific allegations or evidence that Plaintiff is being denied access to any benefits, programs, or activities due to any disability.

To the extent Plaintiff's claims arise as alleged out of his housing placement, Plaintiff's claims cannot be sustained. RHU housing does not equate with denying benefits. See Atkins v. County of Orange, 251 F.Supp.2d 1225, 1231-1232 (S.D.N.Y.2003) (finding that placement of mentally ill inmates within "keeplock isolation" did not equate to a denial of services under the ADA in the absence of an allegation of such denial; mentally ill inmates were not disparately treated from other inmates who were also a "danger to [themselves] or others"). As uncontradicted by Plaintiff's mental health records, he was placed in the RHU for assaultive and self-destructive behavior, not as a result from discrimination against prisoners with mental illness.

Plaintiff does not contend that he was denied the opportunity to participate in or benefit from any particular program or service or that, because of his alleged disability, he was subject to discrimination. He has not alleged that his placement in the RHU for having a lengthy misconduct history constituted disparate treatment based upon his alleged mental illness or was a discriminatory assignment in comparison to other prisoners who were not mentally ill and who were similarly placed in the RHU based upon extensive misconduct records. As this Court has previously held, the implication that the Plaintiff "'could not be disciplined by being placed in the RHU because it would be detrimental to his mental health and thus violative of the ADA ... is not a denial of a service or program under such statutes.... The Court does not believe the ADA ... requires housing of disabled inmates in a certain level of confinement, a certain institution, or a certain security level, as such assignments are primarily matters of security delegated to the discretion of the individual state correctional departments.'" Goins v. Beard, No. 09-1223, 2011 WL 4345874 (W.D. Pa. Sept. 15, 2011), (quoting Scherer v. Pennsylvania Dept. of Corrections, No. 04–191, 2007 WL 4111412, at *9 (W.D. Pa.2007), citing Meachum v. Fano, 427 U.S. 215, 224 (1976) (finding the due process clause does not create a right to hearing prior to a prisoner's transfer from one prison to another)). Based on Plaintiff's failure to present any evidence establish a material issue of fact as to any of the requisite elements of a cause of action under the ADA or RA, Defendants are entitled to judgment in their favor as a matter of law.

IV.     **CONCLUSION**

For the foregoing reasons, Defendants' Motion for Summary Judgment [ECF No. 125] is granted. An appropriate order follows.

**ORDER**

AND NOW, this 29th day of January, 2014, it is hereby ORDERED that the Motion for Summary Judgment [ECF No. 125] filed by the Defendants is GRANTED.

IT IS FURTHER ORDERED that, pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure, if the Plaintiff wishes to appeal from this Order he or she must do so within thirty (30) days by filing a notice of appeal as provided in Rule 3, Fed. R. App. P.

BY THE COURT:

/s/ Maureen P. Kelly
MAUREEN P. KELLY
UNITED STATES MAGISTRATE JUDGE

cc:     All Counsel of Record Via CM-ECF